HAEJI HONG, ATTORNEY #198503
TRIAL ATTORNEY
OFFICE OF THE UNITED STATES TRUSTEE
402 West Broadway, Suite 600
San Diego, CA 92101
(619) 557-5013

Attorneys for
TIFFANY L. CARROLL,
ACTING UNITED STATES TRUSTEE

FILED

2009 NOV -4 AM 10: 24

CLERK
U.S. BANKRUPTCY CT
S. DIST. OF CALIF.

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In re:

TESLA GRAY,

   Debtor-in-Possession.

Case No.: 08-10753-LA11

UNITED STATES TRUSTEE'S MOTION TO CONVERT OR IN THE ALTERNATIVE APPOINT A CHAPTER 11 TRUSTEE

Date: December 10, 2009
Time: 2:00 pm
Dept: 2
Room: 118
Judge: Hon. Louise DeCarl Adler

COMES NOW, the Acting United States Trustee ("UST" or "United States Trustee") respectfully requests that this court enter an order converting the case pursuant to 11 U.S.C. § 1112(b) or in the alternative appoint a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) or (a)(3).

## INTRODUCTION

The United States Trustee's motion to convert or appoint a chapter 11 trustee is based upon the fact that Tesla Gray, the Debtor-in-Possession (the "Debtor"), is incompetent to perform her fiduciary duties of Debtor-in-Possession. The Debtor did not provide information for the Schedules and Statement of Financial Affairs and testified at the meeting of creditors that her father would know more about her financial affairs than she did. Because of the Debtor's lack of knowledge of her own affairs and because this case does not seem to reflect any hope of rehabilitation, the UST requests immediate conversion to chapter 7. In the alternative, because of the Debtor's complete lack of knowledge of her own affairs and inability to conduct her duty

UST'S MOTION TO CONVERT OR APPOINT TRUSTEE
GRAY: 08-10753-LA11

- 1 -

as the Debtor-in-Possession, the UST requests that a chapter 11 trustee be appointed.

## FACTUAL BACKGROUND

On October 28, 2008, John Montgomery and Nancy Montgomery filed an involuntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") against the Debtor to initiate this case.

On July 15, 2009, the Court entered an Order on the Joint Motion for Withdrawal of Debtor's Objections to Involuntary Petition and for Entry of an Order for Relief under Chapter 11 (11 U.S.C. § 303) as Docket #46. *See* Declaration of Shannon Vencill in Support of the United States Trustee's Motion to Convert Or in the Alternative Appoint a Chapter 11 Trustee ("Vencill Decl.").

The § 341(a) Meeting of Creditors was scheduled for August 18, 2009 at 11:30 a.m. (the "First Meeting"). To accommodate the Debtor's schedule, the First Meeting was continued to September 22, 2009 at 9:00 a.m. (the "Second Meeting") without having the Debtor appear. *See* Declaration of Haeji Hong in Support of the United States Trustee's Motion to Convert Or in the Alternative Appoint a Chapter 11 Trustee ("Hong Decl.")

At the Second Meeting, the Debtor's testimony showed that she lacked complete knowledge to manage her affairs in this case. *See* Vencill Decl.

The Debtor testified that her father, Ray Gray, provided information for the Schedules and Statement of Financial Affairs. *See Id.* at Exhibit 2 at 26:53-26.59; *see also id.* at Exhibit 2 at 1:33:21-1:33:27 (referencing Ray Gray and Linda Gray as the Debtor's father and mother). The Debtor testified that she provided no information other than her signature for the Schedules and Statement of Financial Affairs. *Id.* at Exhibit 2 at 27:30-28:11.

The Debtor testified that she invests in real estate and is a hair stylist. *Id.* at Exhibit 2 at 29:23-29:35. The Debtor testified that her father managed her business affairs by locating the real property, handling her finances, and advising what the Debtor should do with the property. *Id.* at Exhibit 2 at 30:00 – 30:28. The Debtor further testified that her mother and father kept books and record and handled bank accounts, checks, reconciliations, account payables, and account receivables. *Id.* at Exhibit 2 at 30:35-30:58. The Debtor also testified that her parents

do not live with her and that they maintain such books and records at their residence. *Id.* at Exhibit 2 at 36:30-36:47. The Debtor testified that she maintains only her personal accounts at her residence and has no books and records relating to her real estate investments. *Id.* at Exhibit 2 at 36:48-37:40. The Debtor testified that in order to manage her affairs, she relies upon her father and her father's knowledge. *Id.* at Exhibit 2 at 31:24-31:38. The Debtor further testified that she has not written a single check without discussing with her father. *Id.* at Exhibit 2 at 31:41-32:04.

When asked about her investment in 112 Acres, Harmony Grove, the Debtor testified that her father found the property and believed it would be a good investment for the Debtor. *Id.* at Exhibit 2 at 32.50-33:04. When asked about documents relating to the property, the Debtor testified that she could not recall what documents she signed. *Id.* at Exhibit 2 at 33:21-33:27. The Debtor further testified that her father explained the terms and conditions. *Id.* at Exhibit 2 at 33:50-34:00. When asked how much the Debtor paid in downpayment, the Debtor testified that she did not know and that her father would know how much she paid in downpayment to purchase the property. *Id.* at Exhibit 2 at 34:56 – 35:05. The Debtor could not explain the discrepancy between the purchase price ($1,600,000) and the amount of secured claim ($17,575,173) and testified that her father would know the reason for such discrepancy. *Id.* at Exhibit 2 at 35:15-36:20. The Debtor did not know whether she ever refinanced on the property. *Id.* at Exhibit 2 at 38:23-38:28. The Debtor did not know if she was current on her property tax. *Id.* at Exhibit 2 at 38:51-39:00. The Debtor did not know how many mortgages she had on the property. *Id.* at Exhibit 2 at 39:02 – 39:13. The Debtor did not know what the mortgage payments are on the property. *Id.* at Exhibit 2 at 39:18-39:25.

The Debtor testified for approximately 2 hours at the Second Meeting. *Id.* at Exhibit 2. The above referenced testimony reflects how the Debtor testified to most questions for the duration of the 2 hour testimony – that the Debtor did not know. For example, the Debtor could not articulate why it was best for the Debtor to have withdrawn the opposition to the involuntary petition and move forward with this bankruptcy and did not know if she had a plan for concluding the bankruptcy case. *Id.* at Exhibit 2 at 43:25-45:02. The Debtor testified that she

did not understand this chapter 11 case. *Id.* at Exhibit 2 at 45:55-46:13. The Debtor could not testify regarding past financial transactions that related to this bankruptcy case. For example, the Debtor did not know how much downpayment she made for any of the real property listed in Schedule A. *Id.* at Exhibit 2 at 59:22-59:30.

The Debtor could not answer basic questions regarding assets and liabilities. For example, the Debtor did not know if she was current on the property tax for any of the real property listed in Schedule A. *Id.* at Exhibit 2 at 59:50-59:58. The Debtor could not answer questions about her assets on Schedule B such as what entailed "Notes (2)/Fallbrook CA for $2,062,641" or whether she had taken steps to recover the amount. *Id.* at Exhibit 2 at 1:12:43-1:13:19. The Debtor did not know how much rent she was receiving from her own father and mother. *Id.* at Exhibit 2 at 1:33:28-1:33:47. Although the Debtor testified that her father took some percentage or profit off of the Debtor's investment in properties in return for his help, the Debtor did not know how much money her father actually received for his help in Debtor's investments in properties. *Id.* at Exhibit 2 at 1:16:59-1:17:50. The Debtor did not know why she listed her father, Ray Gray, on Schedule F for $18,100,000. *Id.* at Exhibit 2 at 1:26:55-1:27:05.

In addition, the Debtor could not explain what happened to approximately $21,000 in cash; she could not explain why she disclosed she had $25,641 of cash in Schedule B when her Debtor-in-Possession bank account reflects she only had approximately $4,000. *Id.* at Exhibit 2 at 1:56:38-1:57:30; *see also id.* at Exhibit 2 at 1:20:47-1:21:23 (testifying that the Debtor had $4,657.40 in the Debtor-in-Possession bank account as of the date of the Second Meeting).

On or about October 16, 2009, the Debtor filed an Opposition to Motion for Relief from Automatic Stay ("Opposition to Relief from Stay") as Docket #69. *Id.* The declaration in support of the Opposition to Relief from Stay was signed by the Debtor's father, Ray Gray, and the Debtor did not provide any declaration. *Id.*

## ARGUMENT

Section 1112(b) provides that, except as provided in §§ 1112(b)(2), 1112(c), and 1104(a)(3), the court shall, upon a showing of "cause," dismiss or convert a case to one under chapter 7, whichever is in the best interest of creditors and the estate. 11 U.S.C. § 1112(b)(1).

UST'S MOTION TO CONVERT OR APPOINT TRUSTEE
GRAY: 08-10753-LA11

-4-

The enumerated list of possible causes in 11 U.S.C. § 1112(b) is not exhaustive, and the court can consider other factors to reach an appropriate result. *In re Consol. Pioneer Mortgage Entities*, 248 B.R. 368, 375 (9th Cir. BAP 2000). Dereliction of fiduciary duties to creditors can be a cause to convert the case. *See In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr.S.D.N.Y. 2003)(stating that courts have found a debtor-in-possession's dereliction of fiduciary duties to creditors was one of the un-enumerated factors that militates dismissal or conversion of the case).

In this case, cause exists for the Court to convert the case. Alternatively, cause exists to appoint a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) or (a)(3).

### A.  Debtor's Gross Mismanagement or Incompetence and Failure to Perform as a Fiduciary Are Causes to Convert the Case.

The Debtor stands as a fiduciary to all of her creditors. *In re Woodson*, 839 F.2d 610, 614 (9th Cir. 1988); *In re An-Tze Cheng*, 308 B.R. 448, 455 (9th Cir. BAP 2004). Failure to perform the fiduciary duty is a cause to convert the case. *See In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr.S.D.N.Y. 2003). Section 1112(b)(4)(B) of the Bankruptcy Code explicitly provides that a case may be converted due to the debtor's "gross mismanagement of the estate." 11 U.S.C. § 1112(b)(4)(B).

In this case, the Debtor cannot perform her fiduciary duties because she has no knowledge of her assets and liabilities. The Debtor could not answer basic questions about assets and liabilities as disclosed in the Schedules and Statement of Financial Affairs at the Second Meeting. The Debtor testified that she provided no information about her own affairs other than her signature to the Schedules and Statement of Financial Affairs. More importantly, the Debtor showed that she cannot give current accounting of the estate's assets. When asked why the Debtor-in-Possession bank account had amount that was approximately $21,000 less than the cash amount disclosed in Schedule B, the Debtor could not answer. "The hallmark of a trustee is accountability." *In the Matter of Nugelt, Inc.*, 142 B.R. 661, 666 (Bankr.D.Del. 1992). Failure to account shows that the Debtor may be grossly mismanaging the estate.

Additionally, even if the Debtor could conduct her affairs with the help of her father

UST'S MOTION TO CONVERT OR APPOINT TRUSTEE
GRAY: 08-10753-LA11

outside of the bankruptcy, the Debtor is the fiduciary not the father. In this case, the Debtor's father is listed as a creditor in Schedule F. Thus, it would be extremely inappropriate to have one of the largest creditors manage the Debtor's affairs and would constitute inability of the Debtor to perform her fiduciary duty to ALL creditors. In fact, although the Debtor is opposing a motion for relief from stay, her father provided the declaration in support of the Opposition to Relief from Stay, not the Debtor. Such pleadings support the fact that the Debtor is not conducting fiduciary duty but has entrusted one of the creditors to do so.

Based on the Debtor's inability to perform her duty and to give accounting, cause exists to convert this case.

### B. Best Interest of Creditors and Estate Favor Conversion

The United States Trustee has grave concerns that the Debtor can perform as a fiduciary. Where the Debtor cannot fulfill fiduciary responsibilities, the Court should find that conversion is in the best interest of the creditors and the estate. *In re Citi-Toledo Partn.*, 170 B.R. 602, 609 (Bankr.N.D.Ohio 1994)(stating that where debtor failed to perform fiduciary duties, conversion is warranted); *In re Palmer*, 134 B.R. 472, 476-77 (Bankr.D.Conn. 1991)(holding that where the debtor failed in fiduciary responsibilities, the conversion of chapter 11 case to chapter 7 is in the best interest of the creditors and the estate so that income and improper disbursements are disclosed). Additionally, it does not appear that the Debtor is generating revenue. Therefore, best interest of the estate favors conversion of the case. *In re Citi-Toledo Partn.*, 170 B.R. at 609.

### C. In the Alternative, Cause Exists to Appoint a Chapter 11 Trustee

In this case, the Debtor essentially has not managed her own real estate investments and relied on another person, her father. The Debtor has never kept any books and records relating to her real estate investments. The Debtor cannot even articulate how much her father took as fees for investing on the Debtor's behalf. Appointment of a chapter 11 trustee is apt in case where there was a total lack of management. *See In re U.S. Communications of Westchester, Inc.*, 123 B.R. 491, 496 (Bankr.S.D.N.Y. 1991)(appointing a chapter 11 trustee and reasoning that there was financial incompetence on the part of current management where there was "a total lack of

financial management" and that "there was no mismanagement because there was no management"). The Debtor has no understanding of her affairs, could not account for cash, and whether she was current on any property taxes. Where the Debtor displayed a total lack of understanding of her own affairs, a chapter 11 trustee should be appointed. *See In the Matter of Warwick Park, Inc.*, 100 B.R. 179, 180 (Bankr.D.Del. 1989)(appointing a chapter 11 trustee where the debtor's principal lacked understanding and experience to operate the business).

## CONCLUSION

Cause exists to convert this case. Therefore, the United States Trustee requests that the Court convert the case. In the alternative, the United States Trustee requests that a chapter 11 trustee be appointed.

Respectfully submitted,
TIFFANY L. CARROLL
ACTING UNITED STATES TRUSTEE

Date: 4 Nov, 2009

By: /s/ Haeji Hong
Haeji Hong
Attorney for the Acting United States Trustee

UST'S MOTION TO CONVERT OR APPOINT TRUSTEE
GRAY: 08-10753-LA11

-7-